1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10    TAMIKA LATASHA SPIVEY,

11                         Plaintiff,

12             v.

13    CAROLYN W. COLVIN,

14                         Defendant.

CASE NO. 3:15-CV-05880-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

15        Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

16   denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental

17   Security Income ("SSI") benefits. The parties have consented to proceed before a United States

18   Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule

19   MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

20        After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

21   erred by failing to properly evaluate the opinions of two of Plaintiff's treating physicians. The

22   ALJ also erred in evaluating Plaintiff's credibility, evaluating the lay witness testimony,

23   assessing the limitations arising out of Plaintiff's medically determinable mental health

24

1   impairments, and in determining Plaintiff's residual functional capacity. Therefore, this matter is

2   reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

3                              **PROCEDURAL& FACTUAL HISTORY**

4          On October 7, 2011, Plaintiff filed applications for DIB and SSI. *See* Dkt. 9,

5   Administrative Record ("AR") 337-349. Plaintiff alleges she became disabled on June 22, 2011,

6   due to degenerative disc disease. *See* AR 375.  Plaintiff's applications were denied upon initial

7   administrative review and on reconsideration. *See* AR 126, 135, 170, 182. A hearing was held

8   before an ALJ on June 4, 2013, at which Plaintiff, represented by counsel, appeared and testified.

9   *See* AR 82.

10          On July 18, 2013, the ALJ found Plaintiff was not disabled within the meaning of

11   Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 205. Plaintiff's request

12   for review of the ALJ's decision was granted by the Appeals Council on May 19, 2015, which

13   reversed the ALJ's decision and remanded the case for additional findings. AR 211-13. Among

14   other things, the Appeals Council instructed the ALJ to: further evaluate Plaintiff's claimed

15   mental impairments; obtain medical expert testimony on the severity of Plaintiff's impairments;

16   and further develop the record.

17          On March 23, 2015, the ALJ again found Plaintiff to be not disabled within the meaning

18   of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 41. Plaintiff's

19   request for review of the ALJ's decision was denied by the Appeals Council on November 3,

20   2015, making that decision the final decision of the Commissioner of Social Security (the

21   "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On July 14, 2015, Plaintiff filed a

22   complaint in this Court seeking judicial review of the Commissioner's final decision.

23

24

1    Plaintiff argues the denial of benefits should be reversed and remanded for further

2  proceedings, because the ALJ failed to: 1) properly evaluate the medical opinions of two of

3  Plaintiff's treating physicians; 2) justify a change in Plaintiff's residual functional capacity; 3)

4  discuss what weight, if any, he gave to lay witness statements; 4) properly evaluate Plaintiff's

5  subjective symptom testimony; 5) properly evaluate Plaintiff's mental impairments and discuss

6  all limitations, regardless of severity, at subsequent steps in the sequential evaluation. Dkt. 15,

7  pp. 1-2.

8                      **STANDARD OF REVIEW**

9    Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

10  security benefits only if the ALJ's findings are based on legal error or not supported by

11  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

12  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

13  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

14  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

15  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

16                        **DISCUSSION**

17  I.    Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

18       **A. Standard**

19    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

20  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

21  821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

22  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

23  examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

24

ORDER ON PLAINTIFF'S COMPLAINT - 3

1  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

2  *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ

3  can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

4  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

5  F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

6  explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

7  157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant

8  probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

9  (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

10 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

11 disregarding [such] evidence." *Flores*, 49 F.3d at 571.

12 **B.  Application of Standard**

13         The ALJ found Plaintiff had the residual functional capacity to perform light work as

14 defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except she can climb, balance, stoop, kneel

15 and crouch only occasionally, and can never crawl. AR 33. Plaintiff argues the ALJ erred by

16 failing to include the more restrictive limitations opined to by Plaintiff's treating physicians, Dr.

17 Moris Senegor, M.D. and Dr. Elvis Tanson, D.O.

18                     1. *Moris Senegor, M.D.*

19         Dr. Senegor was Plaintiff's treating physician from August 29, 2011 to August 1, 2012.

20 AR 593.  During the course of Plaintiff's treatment, Dr. Senegor diagnosed Plaintiff with

21 advanced degenerative disc disease at L5-S1, and prescribed physical therapy and six epidural

22 steroid injections, which were ineffective. AR 526, 529, 531, 537. In light of Plaintiff's

23 unresponsiveness to these treatment measures, Dr. Senegor recommended Plaintiff consider a

24

1   L5-S1 fusion surgery, which she declined. AR 526, 560, 563. On August 9, 2012, Dr. Senegor

2   completed a medical source statement in which he opined, as a result of Plaintiff's degenerative

3   disc disease and chronic pain, Plaintiff will be unable to perform even sedentary work. *See* AR

4   593-97. Specifically, Dr. Senegor opined Plaintiff could lift and carry no more than 10 lbs on an

5   occasional basis, and would be unable to sit, stand, or walk for even one hour in an eight hour

6   work day. AR 594-95. Dr. Senegor also opined Plaintiff would have less than full use of her

7   hands and feet, and would never be able to climb, stoop, crouch, kneel, crawl, push or pull. AR

8   595-96.

9          The ALJ gave Dr. Senegor's opinion little weight for the following two reasons:

10         [1] [T]reatment records do not document signs, symptoms, clinical laboratory
           findings, or objective observations supportive of the limitations he assesses, [2]
11         nor are such limitations supported by his conservative treatment of the claimant,
           with visits most recently scheduled only twice a year (SSR 96-6P).
12

13  AR 39 (numbering added). Plaintiff argues these were not specific and legitimate reasons,

14  supported by substantial evidence, for giving Dr. Senegor's opinion less weight. The Court

15  agrees.

16         First, the ALJ's finding Dr. Senegor's opinion is unsupported by his treatment records is,

17  itself, a bare, conclusory statement offered without support in the record. In order to reject the

18  opinion of a treating physician, an ALJ must do more than state his or her conclusions; he or she

19  must set forth their own interpretations and explain why they, rather than the doctors' are correct.

20  *Reddick*, 157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). *See Garrison v. Colvin*, 759 F.3d

21  995, 1012 (9th Cir. 2014). The ALJ's failure to articulate his reasoning with sufficient specificity

22  was error. *See, e.g.*, *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (finding similar

23  reasoning for rejecting a treating physician's opinion was "broad and vague, failing to specify

24  why the ALJ felt the treating physician's opinion was flawed"). Moreover, this finding is not

1 supported by substantial evidence in the record. Dr. Senegor repeatedly cites Plaintiff's lumbar

2 degenerative disc disease as the basis for his opined limitations. *See* AR 593-97. Importantly, as

3 the ALJ discusses in an earlier portion of the written decision, this diagnosis is supported by an

4 MRI which revealed focal degenerative disc disease at the L5-S1 with desiccation, collapse,

5 some bulging, and modic changes, as well as bilateral foraminal stenosis. AR 34, 534 (noting Dr.

6 Senegor reviewed Plaintiff's MRI results and discussed them with Plaintiff). This is precisely the

7 sort of objective evidence the ALJ claims Dr. Senegor's treatment notes lacked.

8        Second, the ALJ's finding Dr. Senegor's opined limitations were inconsistent with his

9 recent conservative treatment of Plaintiff's impairments is not a specific, legitimate reason,

10 supported by substantial evidence, for discounting the opinion. Though Dr. Senegor had been

11 seeing Plaintiff for pain and medication management only twice per year at the time of the ALJ's

12 opinion, Dr. Senegor had previously recommended Plaintiff "seriously consider" a two-stage

13 fusion surgery of her L5-S1 vertebrae. AR 526, 560, 563. Stage one of the surgery "would be

14 anterior lumbar interbody fusion . . . at the L5-S1 segment with an Orthofix cage and

15 demineralized bone matrix" and stage two would be a "posterolateral fusion with pedicle screws

16 and Auto/Allograft." AR 526. Plaintiff indicated she was reluctant to pursue surgery due to its

17 significance and her concern it would render her unable to care for her two small children. AR

18 96-97, 573. As other treatment modalities, such as epidural steroid injections, had previously

19 been unsuccessful, Dr. Senegor returned Plaintiff to chronic pain and medication management.

20 *See* AR 526, 534, 563.

21        While a failure to pursue treatment can be a basis for finding a claimant to be not

22 disabled, Social Security Administration regulations provide that failing to pursue a specific

23 treatment due to its high risk is a good reason for a claimant to not pursue treatment. 20 C.F.R.

24

ORDER ON PLAINTIFF'S COMPLAINT - 6

1    §§ 404.1530; 416.930. *Cf. Orn v. Astrue*, 495 F.3d 625, 638-39 (9th Cir. 2007) (holding it was

2    error to reject a claimant's subjective symptom testimony because the claimant's inability to pay

3    was a "good" reason for failing to seek treatment), *and Jones v. Heckler*, 702 F.2d 950, 953-55

4    (11th Cir. 1983) (citing *Cassiday v. Schweiker*, 663 F.2d 745, 750 (7th Cir. 1981); *Schena v.*

5    *Secretary of Health and Human Services*, 635 F.2d 15, 19 (1st Cir. 1980); *Hepner v. Mathews*,

6    574 F.2d 359, 362 (9th Cir. 1978)) (discussing a claimant's reasons for declining a myelogram

7    and spinal surgery). Though the ALJ cited Plaintiff's reasons for declining the surgery earlier in

8    the written decision, the ALJ fails to acknowledge Dr. Senegor's relatively conservative

9    treatment was a direct result of Plaintiff's unwillingness to pursue a substantially more invasive

10   surgical procedure. *See* AR 37, 39. Because the ALJ failed to consider Plaintiff's refusal to

11   undergo a potentially high-risk surgical procedure as the predicate for Dr. Senegor's

12   conservative treatment, the ALJ's second reason for discounting Dr. Senegor's opinion was

13   unsupported by substantial evidence.[1]

14       Because the ALJ failed to offer specific and legitimate reasons, supported by substantial

15   evidence, for discounting Dr. Senegor's opinion, the ALJ erred. Further, Dr. Senegor opined to

16   physical limitations substantially more restrictive than those included in the ALJ's residual

17   functional capacity finding. For example, while the ALJ found Plaintiff was capable of

18   performing light work except she can only occasionally climb, balance, stoop, kneel, and crouch,

19   Dr. Senegor opined Plaintiff would be restricted to less than sedentary work, and would be

20   categorically unable to climb, stoop, kneel, and crouch. *Compare* AR 33 *with* 594-97. Thus, this

21

22

23       [1] This is not to say the ALJ is required to find the proposed surgery was a sufficiently "high risk" procedure to trigger the exception contained in 20 C.F.R. §§ 404.1530 and 416.930. Rather, the ALJ's error stems from his failure to consider this possibility at all in the written

24   decision.

1    error is not "inconsequential to the ultimate nondisability determination," and requires reversal.

2    *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

3                                        2.    *Elvis Tanson, D.O.*

4           Dr. Tanson treated Plaintiff from September 11, 2014 to November 11, 2014 for lower

5    back pain due to spinal stenosis. AR 813. On December 10, 2014, Dr. Tanson completed a

6    medical source statement in which he opined, due to Plaintiff's degenerative disc disease and

7    spinal stenosis, Plaintiff would be unable to lift any weights on even an occasional basis, would

8    be able to sit for no more than four hours in an eight hour work day, and could stand or walk for

9    no more than two hours in an eight hour workday. *See* AR 814-15. Dr. Tanson also opined

10   Plaintiff would have less than full use of her hands and feet, and would never be able to climb,

11   balance, stoop, crouch, kneel, crawl, push or pull. AR 595-96.

12          The ALJ summarized Dr. Tanson's opinion in the written decision. AR 39. However,

13   while the ALJ discussed the content of Dr. Tanson's opinion, the ALJ offered no indication as to

14   what, if any, weight he ascribed to the opinion. AR 39. Notably, Dr. Tanson's opined limitations

15   are substantially more restrictive than those included in the ALJ's residual functional capacity

16   finding, but the ALJ provided no explanation as to why he rejected Dr. Tanson's opined

17   limitations. An ALJ's failure to discuss a treating physician's opinion, or otherwise explain the

18   weight given to the opinion, is harmful error. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir.

19   2012). When the ALJ ignores significant and probative evidence in the record favorable to a

20   claimant's position, the ALJ "thereby provide[s] an incomplete residual functional capacity

21   determination." *Id.* at 1161. *See also Vincent,* 739 F.2d at 1394-95 (*quoting Cotter v. Harris*, 642

22   F.2d 700, 706 (3d Cir. 1981)).  While the ALJ may not necessarily be bound by Dr. Tanson's

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 8

1  opinion, the ALJ must present at least a specific and legitimate reason for giving the opinion less

2  than full weight. *See Hill*, 698 F.3d at 1160.

3       Defendant argues the ALJ did, in fact, discuss the weight he gave to Dr. Tanson's

4  opinion, as the ALJ discussed the content of Dr. Senegor and Dr. Tanson's opinions in

5  succession. Only after discussing both opinions did the ALJ provide his reasons for discounting

6  Dr. Senegor's opinion. Thus, Defendant argues the ALJ meant to refer to both Dr. Senegor and

7  Dr. Tanson. However, the ALJ's decision unambiguously only discusses the weight given to Dr.

8  Senegor's opinion. AR 39 ("the medical source statement of Dr. Senegor indicating limitation to

9  significantly less than the full range of sedentary work is given lesser weight.") To do as

10 Defendant suggests and assume the ALJ's reasons for rejecting Dr. Senegor also apply to Dr.

11 Tanson would be an impermissible *post hoc* rationalization this Court is not authorized to

12 perform. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009)

13 ("meaningful review of an administrative decision requires access to the facts and reasons

14 supporting that decision.").

15      Defendant, citing *Molina v. Astrue*, also urges the Court to find any error in the ALJ's

16 failure to discuss the weight given to Dr. Tanson's opinion was harmless, because "a check-box

17 opinion with so little clinical support would not have changed the ultimate nondisability

18 determination." Dkt. 16, p. 4 (*citing Molina*, 674 F.3d at 1122). *Molina*, however, is

19 distinguishable on this point. The section of *Molina* cited by Defendant pertains to harmless error

20 in failing to discuss duplicative *lay witnesss* testimony, rather than medical opinion evidence.

21 *Molina*, 674 F.3d at 1122. Further, unlike lay witness testimony, Social Security regulations and

22 rulings require an ALJ to consider *all* medical opinions in the record, regardless of source. 20

23 C.F.R. §§ 404.1520; 404.1527(b) & (c). Finally, though Dr. Tanson's opinion was rendered on a

24

ORDER ON PLAINTIFF'S COMPLAINT - 9

1  check-box form, this fact, alone, does not mean Dr. Tanson's opinion must be given little weight.

2  *Compare Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) *with Garrison v. Colvin*, 759

3  F.3d 995, 1013 (9th Cir. 2014). In any event, Defendant's proposed harmless error analysis is, at

4  bottom, nothing more than a second invitation for the court to engage in impermissible *post hoc*

5  rationalization, an invitation the Court must decline. *See Bray,* 554 F.3d at 1225-26.

6       Because the ALJ failed to explain what weight, if any, he gave to Dr. Tanson's opinion,

7  the ALJ committed harmful error.

8       II.      Additional Errors

9       Plaintiff also alleges several other errors in the ALJ's decision. Specifically, the Plaintiff

10  alleges the ALJ erred in assessing her credibility, erred in evaluating lay witness testimony, erred

11  in failing to account for all impairments, regardless of severity, in the subsequent steps of the

12  sequential evaluation, and erred in calculating Plaintiff's residual functional capacity and

13  conducting an analysis at Step Four of the sequential evaluation. The ALJ will necessarily have

14  to reconsider these issues due to the harmful errors in evaluating the medical opinion evidence

15  discussed above, therefore, the Court need not address these allegations in great detail.

16  Nonetheless, the errors raised by the Plaintiff warrant brief discussion here with the intent of

17  avoiding any unnecessary delay in the final disposition of this matter.

18

19

20

21

22

23

24

## A. Plaintiff's Subjective Symptom Testimony[2]

The ALJ failed to offer specific, clear and convincing reasons for discounting Plaintiff's testimony concerning her subjective symptoms. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Though the ALJ cites to Plaintiff's activities of daily living, the ALJ failed to provide specific findings concerning how those activities were inconsistent with Plaintiff's stated physical limitations, or how those activities could be transferable to a work setting. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014), *Orn*, 495 F.3d at 639 (9th Cir. 2007). The ALJ also found Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence. However, while the ALJ described the medical evidence in the record, he does not explain how Plaintiff's testimony is *inconsistent* with the objective medical evidence. *See* AR 33-37. Further, a claimant's subjective testimony cannot be rejected "on the sole ground that it is not fully corroborated by objective medical evidence[.]"*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). *See also* 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). As a result, the ALJ failed to offer specific, clear, and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective symptom testimony.

## B. Lay Witness Testimony

The ALJ discussed the lay witness statements from five of Plaintiff's family and friends; however, the ALJ did not explain what, if any weight, he gave to the lay witness statements. AR 36. In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded

---

[2] The Social Security Administration recently rescinded Social Security Ruling ("SSR") 96-7P, "Policy Interpretation Ruling Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements." SSR 16-3P, *available at* 2016 WL 1119029, at *1.The Social Security Administration noted the use of the term "credibility" was not consistent with the Administration's regulations, and further clarified "subjective symptom evaluation is not an examination of the individual's character." *Id.*

1   without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v.*

2   *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p,

3   2006 WL 2329939 at *2. An ALJ may discredit a lay witness' testimony with specific reasons

4   "germane to each witness." *Bruce*, 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d

5   1217, 1224 (9th Cir. 2010). The ALJ's failure to offer any reasons for disregarding the lay

6   witness testimony was error.

7          Defendant, citing *Molina v. Astrue*, argues any error in evaluating the lay witness

8   testimony was harmless, as the lay witness testimony is cumulative of Plaintiff's subjective

9   symptom testimony, which the ALJ also discounted. *Molina*, 674 F.3d at 1122. However, as

10  discussed above, the ALJ did not properly discount Plaintiff's subjective symptom testimony.[3]

11  Thus, the ALJ's failure to discuss the lay witness statements was harmful error.

12                  **C.  Severity of Medically Determinable Impairments**

13         Plaintiff argues the ALJ erred by failing to consider Plaintiff's mental impairments to be

14  severe at Step Two of the sequential evaluation. The ALJ relied heavily on the testimony of Dr.

15  Tracy Gordy, M.D., who opined Plaintiff had the medically determinable impairments of

16  adjustment disorder, general anxiety disorder, and borderline intellectual functioning, but found

17  these impairments were not severe. AR 32, 54-55. However, Dr. Gordy initially opined

18  Plaintiff's mental impairments would lead to moderate limitations in concentration, persistence,

19  and pace. AR 53-55. Upon being informed by the ALJ that a finding of "moderate" limitations in

20

21

22         [3] Defendant also argues the ALJ validly discounted the same lay witness statements in the earlier decision, thus it would be a waste of administrative resources to remand the case for the ALJ to repeat this "obviously germane reasoning." Dkt. 16, p. 5. However, the ALJ's discussion

23  of the lay witness testimony in the decision under review is a word-for-word copy of the ALJ's discussion included in the first decision. *Compare* AR 36 with AR 202. Notably, the ALJ failed

24  to explain what weight, if any, he gave to the lay witness statements in *either* decision.

1    concentration, persistence, and pace would necessarily mean Plaintiff's mental health

2    impairments would qualify as severe under Social Security Administration regulations, Dr.

3    Gordy opined Plaintiff's medically determinable mental health impairments would cause no

4    more than mild limitations in Plaintiff's concentration, persistence, and pace. AR 55 ("You

5    know, Your Honor, I've been testifying since 2000. This is the first time I ever heard that when

6    you say moderate that it's severe. So I'd back up and say that her concentration and pace would

7    [sic] mild then because there's no evidence here that this lady has a severe psychiatric

8    impairment"). *See* 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1); 20 C.F.R. Part 404, Subpt. P,

9    App. 1, at 12.00(C).  The ALJ fails to discuss this change in testimony in the written decision.

10         The shift in Dr. Gordy's testimony after clarification from the ALJ raises the possibility

11   his opinion does not rise to the level of substantial evidence. *Cf. Tonapetyan v. Halter*, 242 F.3d

12   1144, 1150-51 (9th Cir. 2001) (noting an ALJ was not free to ignore a medical expert's

13   equivocal testimony about the lack of a complete record upon which to assess a claimant's

14   mental impairments). As this case must be remanded for further proceedings due to the errors

15   discussed above, the ALJ should also take the opportunity to ensure Dr. Gordy's testimony

16   concerning the severity of Plaintiff's medically determinable mental impairments is reliable and

17   consistent with Social Security Administration regulations. *Cf. Claiborne ex rel., L.D. v. Astrue*,

18   2012 WL 205907, at *17-*18 (N.D. Ill. 2012).

19              **D.  Calculation of Plaintiff's Residual Functional Capacity**

20         Plaintiff argues the ALJ's errors in evaluating the medical opinion evidence, Plaintiff's

21   subjective symptom testimony, the lay witness evidence, and the limitations arising from

22   Plaintiff's medically determinable impairments resulted in an erroneous residual functional

23   capacity assessment. In assessing a claimant's residual functional capacity, an ALJ is required to

24

1  consider "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3),

2  416.945(a)(3). An ALJ's failure to properly evaluate all of the evidence may result in a flawed

3  residual functional capacity finding. *See* SSR 96-8-p, 1996 WL 374184 at *2. Due to the ALJ's

4  other errors, discussed above, the ALJ will necessarily have to re-evaluate Plaintiff's residual

5  functional capacity on remand, and proceed on to Steps Four and Five, as appropriate.

6                                      **CONCLUSION**

7       Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

8  erred by failing to: properly evaluate the opinions of Plaintiff's treating physicians; properly

9  assess Plaintiff's credibility; properly evaluate the lay witness testimony; properly assess the

10 limitations arising from Plaintiff's medically determinable impairments; and properly evaluate

11 Plaintiff's residual functional capacity. Therefore, the court orders this matter be reversed and

12 remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should

13 reevaluate and reweigh all of the medical opinion evidence, reevaluate Plaintiff's severe

14 impairments at Step Two of the sequential evaluation, reevaluate Plaintiff's credibility,

15 reevaluate the lay witness testimony, reevaluate Plaintiff's residual functional capacity, and

16 proceed on to Step Four and/or Step Five of the sequential evaluation, as appropriate. On

17 remand, the ALJ should also develop the record as needed. Judgment should be for Plaintiff and

18 the case should be closed.

19      Dated this 16th day of June, 2016.

20

21                                          David W. Christel
                                            United States Magistrate Judge
22

23

24